UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WORTHINGTON METAL FABRICATORS, LLC fdba SHARON STAIRS, | ) ) ) ) | CASE NO. 5:13CV2230 JUDGE JOHN R. ADAMS |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| BURGESS  STEEL FABRICATORS, LLC, et al. | ) ) ) | **ORDER AND DECISION** |
| Defendants. | ) | |

Pending before this Court are Defendants', Burgess Steel Fabricators, LLC and Burgess Steel, LLC (collectively, "Burgess"), motions to dismiss for lack of personal jurisdiction, or in the alternative to stay pending arbitration, or, to dismiss for improper venue or for transfer of this case. Doc. 13. For the following reasons, the motions to dismiss for lack of personal jurisdiction and improper venue are DENIED, but the Court hereby GRANTS Burgess' motion to transfer the case to the Southern District of New York.

I.      FACTS

Plaintiff Worthington Metal Fabricators, LLC ("Worthington"), formerly doing business as Sharon Stairs, is a limited liability company organized under the laws of Ohio. Doc. 1 at 2.  At all relevant times, Worthington had its principal place of business in Akron, Ohio. Doc. 1 at 2. Worthington, acting as Sharon Stairs, was in the business of fabricating metal and steel egress stairs for the commercial construction industry. Doc. 1 at 2. It is undisputed that a Maryland company purchased Sharon Stairs in November of 2012, and the business is no longer operated in Ohio. Doc. 13 at 12, 14, Ex.5.

Burgess and Worthington have worked together on various construction projects over the course of 13 years.  Doc. 1-15.  In fact, over this 13-year business relationship, Burgess and Worthington had worked together on 24 different projects, totaling over $2,800,000.  Doc. 19 at 12; Doc. 1-15.  During this time, Worthington submitted 71 invoices to Burgess, and Burgess then made payment on 61 of the invoices.  Doc. 19 at 12; Doc. 1-15.  Of the 24 different projects, seven are now at issue.  Doc. 1.

Beginning in 2008 and continuing into 2011, Worthington and Burgess entered into a series of purchase orders and contracts whereby Worthington would detail, fabricate, and deliver stair systems to Burgess.  Doc. 1 at 3.  Worthington would manufacture the stair systems at its facility in Akron, Ohio, and then arrange for their delivery to the project sites in New York and Pennsylvania.  Doc. 1 at 2. On one occasion, a representative of Burgess traveled to Ohio in connection with the projects. Doc. 13 at 3.

Worthington alleges that Burgess breached a series of contracts, totaling $519,664.90 in unpaid fees. Doc. 1 at 12. These contracts were connected to seven construction projects, six in New York and one in Pennsylvania. Doc. 13 at 2. Burgess argues that one of the agreements included a forum selection clause in favor of New York and also included an arbitration agreement. Doc. 13 at 4. On October 9, 2013, Worthington brought suit in the Northern District of Ohio against Burgess to recover the alleged unpaid fees. Doc. 1.  Burgess then filed a series of motions, including a motion to dismiss for lack of personal jurisdiction, a motion to dismiss for improper venue, alternatively, a motion to transfer venue and motion to stay pending arbitration. Doc. 13.

## II.    PERSONAL JURISDICTION

The Court starts its analysis with Burgess' motion to dismiss for lack of personal jurisdiction.  For the following reasons, the Court DENIES Burgess' motion.

A plaintiff has the burden of showing that personal jurisdiction exists, but this burden requires only a *prima facie* showing of jurisdiction.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  In resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(2) based solely on written submissions and affidavits, the district court does not weigh the controverted assertions of the party seeking dismissal.  *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).  In these circumstances, "the burden of the plaintiff is relatively slight and the district court 'must consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980).

In evaluating personal jurisdiction, a court considers two factors: (1) whether Ohio's long-arm statute authorizes the exercise of jurisdiction over the defendants; and (2) whether the exercise of that jurisdiction comports with constitutional due process.  *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).

### A.  Ohio's Long-Arm Statute

"In analyzing personal jurisdiction in diversity actions… federal courts must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over the parties, subject to constitutional due process requirements."  Ohio's long-arm statute provides, in relevant part:

(A)    A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1)   Transacting any business in this state;

* * *

3

Ohio Rev. Code §2307.382(A)(1).

Because the phrase "[t]ransacting any business" is so broad, the statute has given rise to a variety of cases, which have "'…reached their results on highly particularized fact situations, thus rendering any generalization unwarranted.' " *U.S. Sprint,* 68 Ohio St.3d at 185, quoting 22 Ohio Jurisprudence 3d (1980) 430, Courts and Judges, Section 280; *see also Wayne Cty. Bur. of Support v. Wolfe* (1991), 71 Ohio App.3d 765, 769 ("…test for minimum contacts is not susceptible to mechanical application; rather, the facts of each case must be weighed to determine whether the requisite affiliating circumstances are present."). The term "transact" as utilized in the phrase "[t]ransacting any business" encompasses "'to carry on business'" and "'to have dealings,'" and is "'broader * * * than the word 'contract'." (Emphasis deleted.) *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75.

Here, the underlying action arises directly out of the seven project agreements between the parties. Prior to this, the parties had worked on 17 separate projects over the course of nine years. For the seven projects at issue, Burgess contracted with Worthington to manufacture commercial stairs, and it is more than reasonable to understand that Burgess knew that, by requesting the production of the stairs, Worthington would manufacture the stairs at its manufacturing facility – in Ohio – just as Worthington had done for the 17 previous projects. Burgess deliberately entered into each of the seven agreements with Worthington, an Ohio company at the time, knowing the production of the stairs would have an impact on Ohio's economy.   In fact, Burgess even came to Ohio on one occasion to inspect the manufacturing. Burgess contacted Worthington in Ohio to discuss various aspects of the project, and Burgess paid invoices related to the disputed projects to Worthington in Ohio.

4

Given all of this, the claims asserted in the Complaint arise out of Burgess transacting business in Ohio. Therefore, this Court has personal jurisdiction over Burgess according to Ohio's long-arm statute.

### B.  Due Process Analysis

After determining that Ohio's long-arm statute authorizes the exercise of jurisdiction over Burgess, the Court must analyze whether this jurisdiction comports with constitutional due process.  The Court hereby finds that it does.

As set forth by the Sixth Circuit in *Southern Machine Co. v. Mahasco Indus., Inc.*, when evaluating due process in the context of specific personal jurisdiction, the court must determine whether: 1) the defendant purposefully availed himself of the privilege of acting in the forum state or caused a consequence in the forum state; 2) the cause of action arose from the defendant's activities there; and 3) the acts of the defendant or consequences caused by the defendant have had substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.  *Southern Machine Co. v. Mahasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  A "consequence" in the forum state includes "effects on the 'general conduct of business, in Ohio which may not be readily quantifiable,' but are 'nonetheless real.'"  *Health care Industries, Inc. v. Logan Park Care Center, Inc.*, 573 F.Supp. 360, 361, quoting *Davis H. Elliott Co., Inc. v. Caribbean Utilities, Ltd.*, 513 F.2d 1176, 1181-82 (6th Cir. 1975).

The purposeful availment prong of the *Southern Machine* test is essential to a finding of personal jurisdiction. *Calphalon v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).  "[P]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in the [forum state] or conduct which can be properly regarded as a prime generating cause of the

effects resulting in [the forum state], something more than a passive availment of [the forum state's opportunities]." *Bridgeport Music, Inc. v. Still N The Water Publ'g,* 327 F.3d 472, 478 (6th Cir. 2003); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (defendant "…manifestly has availed himself of the privilege of conducting business [in the forum], and because his activities are shielded by the 'benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."). If a plaintiff can demonstrate purposeful availment, the absence of physical contacts with the forum state will not defeat personal jurisdiction over a non-resident defendant. *Id.* at 479.

In this case, Burgess has availed itself of the privilege of conducting business in Ohio for over 13 years. More specifically, Burgess entered into consecutive agreements with Worthington for seven different projects over the course of four years. Worthington's manufacturing plant was in Ohio, of which Burgess would have reasonably been aware after years of working with Worthington. But simply narrowing the inquiry to the projects at issue in the Complaint, Burgess would have known – after the first project – that Worthington was an Ohio company, manufacturing its products in Ohio, and that requesting Worthington to produce the stairs would affect the stream of commerce in Ohio. Burgess then requested six more projects be completed by Worthington in Ohio. Burgess recognized that it was affiliated with Ohio when it traveled to the state to inspect the manufacturing process after problems arose. As described above, for the projects at issue, Burgess paid years of invoices from Worthington and spoke directly with Worthington representatives in Ohio. Given this, the first element of the *Southern Machine* test has been satisfied.

Next, Worthington's Complaint asserts a claim for breach of contract for all seven projects, along with a claim for action on account and violation of Ohio's Prompt Pay Act under O.R.C. §4113.61. These causes of action all arise out of Worthington's manufacture of stairs in Ohio for each of the seven projects. The claims all stem from Burgess' alleged failure to pay all of Worthington's invoices for these disputed projects. As such, the second prong of *Southern Machine* has been satisfied.

Finally, the consequences caused by Burgess' engaging in seven separate project agreements with Worthington over a four-year time span have a substantial enough connection with Ohio to make the exercise of jurisdiction over the defendants reasonable. Burgess was fully aware, based on the previous 17 projects, that Worthington manufactured its stair systems in Ohio, inspection of the stairs while being produced occurred in Ohio, stair systems would be shipped from Ohio, and payment would be made to Worthington in Ohio. Therefore, the consequences of Burgess' engaging in a multi-contract business relationship with Worthington in Ohio have a substantial enough connection with the forum state as to make the exercise of jurisdiction over the defendants reasonable. The third element of *Southern Machine* is satisfied.

As such, this Court has personal jurisdiction over each defendant in this case. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is denied.

**III.    VENUE**

Burgess filed a motion to dismiss for improper venue, or in the alternative, a motion to transfer venue to the district court in New York or New Jersey. The decision of whether to dismiss or transfer a matter for improper venue is within the district court's sound discretion. *First of Michigan Corporation, et al v. Bramlet, et al*, 141 F.3d 260, 262 (6th Cir. 1998).

**A.** **Motion to Dismiss for Improper Venue**

When jurisdiction is founded solely on diversity of citizenship, proper venue must be examined under 28 U.S.C. §1391 (a)(2).  Under this statute, "…the appropriate forum for a case is any forum in which a substantial part of the events or omissions giving rise to the claim occurred.  *Id.* at 264.  The Sixth Circuit has held that 28 U.S.C. §1391(a)(2) does not require the court to determine whether the most substantial events giving rise to the claim occurred – rather, venue is proper in "any forum with a substantial connection to the plaintiff's claim."  *First of Mich. Corp. v. Bramlet*,141 F.3d 260, 263 (6th Cir. 1998).

In this case, Ohio is a proper venue for the litigation.  As set forth in the jurisdictional analysis, the stairs at issue were manufactured in Ohio and part of the dispute centers on the production of the those stairs.  This is sufficient to constitute a "substantial connection" to Worthington's claims.  Thus, Ohio is not an improper venue for the matter, and Burgess' motion to dismiss is denied.

**B.** **Motion to Transfer Venue**

The Court next considers Burgess' alternative motion to transfer venue under 28 U.S.C. §1404(a).   The statute provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. §1404(a).  The decision whether to transfer venue is vested in the sound discretion of the trial court. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32-33 (1955).  "[I]n ruling on a motion to transfer under §1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-

8

interest concerns, such as systematic integrity and fairness, which come under the rubric of 'interests of justice'."  *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).

Under this Section 1404(a), a threshold consideration is whether the action "might have been brought" in the proposed transferee district court, i.e., New York or New Jersey.  *Hoffman v. Blaski*, 363 U.S. 335, 339-40 (1960); *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980).  The Court finds that the underlying suit could have been filed in either state.  Pursuant to 28 U.S.C. §1391(b)(1), the matter could have been filed in New Jersey since all defendants are domiciled, with their principal place of business, in the State of New Jersey.  Likewise, under 28 U.S.C. §1391(b)(2), six of the seven projects occurred in one of the boroughs of New York City, and as such, a "substantial part of the events…giving rise to the claim" occurred in the State of New York.  Worthington has not disputed that either state could be the proper venue under 28 U.S.C. §1391.  Through its motion to transfer venue, Burgess has acknowledged that it would be subject to process in either state.  Given all of this, under the statute, venue is proper in this Court, along with New York or New Jersey.

The Court now looks to whether a transfer is justified for "the convenience of parties and witnesses" and is "in the interest of justice" under 28 U.S.C. §1404(a).  "The power of the court to transfer pursuant to Section 1404(a) has its roots in the doctrine of forum non conveniens."  *Neff Athletic Lettering*, 524 F.Supp. at 272; *see also City of Columbus v. Hotels.com, L.P., et al.*, 2007 WL 2029036, *8 (S.D. Ohio 2007).  In *Gulf Oil Corp. v. Gilbert*, the Supreme Court outlined factors to be evaluated in determining whether forum non conveniens should apply in a particular case:

> An interest to be considered and the one most likely to be most pressed, is the private interest of the litigant.  Important considerations are the relative ease of access to proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

The grant of power to transfer under Section 1404(a) did not affect a codification of the doctrine of forum non conveniens.  *Neff Athletic Lettering*, 524 F. Supp. at 272.  While the same factors relevant to forum non conveniens should be considered, parties need only a lesser showing of inconvenience to justify transfer pursuant to Section 1404(a).  *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955); *Mead Corp. v. Oscar J. Boldt Const. Co.*, 508 F.Supp. 193,197 (S.D. Ohio 1981).   Specifically, the Supreme Court held in *Norwood v. Kirkpatrick* that "…Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience.  This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not considered, but only that the discretion to be exercised is broader."  *Norwood v. Kirkpatrick*, 349 U.S. 29, 32.

Given this, the Court determines that the facts in the case justify a change of venue to the Southern District of New York.

1.    <u>Plaintiff's choice of forum.</u>  In opposing the motion to transfer venue, Worthington argues that its choice of forum in Ohio is entitled to deference and that Burgess cannot produce sufficient evidence to disturb that choice.  Doc. 19 at 13-14.  However, in *Norwood*, the Supreme Court addressed this strict application of the former common law doctrine of forum non conveniens:

10

> When Congress adopted s 1404(a), it intended to do more than just codify the existing law on forum non conveniens. As this Court said in *Ex parte Collett*, [citations omitted], Congress, in writing s 1404(a), which was an entirely new section, was revising as well as codifying. The harshest result of the application of the old doctrine of forum non conveniens, dismissal of the action, was eliminated by the provision in s 1404(a) for transfer…As a consequence, we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. **This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.**

*Norwood*, 349 U.S. at 32 (emphasis added).  As such, the Court considers Worthington's choice

of forum but does not limit its examination to this single factor.  *Id.*; *City of Columbus, et al., v.*

*Hotels.com, et al.,* 2007 WL 2029036, *8 (S.D. Ohio 2007) ("'a trial court retains discretion to

determine the weight to be given the plaintiff's choice of forum on a case-by-case basis.'"

[citation omitted]).

      2.    <u>Location of Documents</u>:  "Since documents can normally be easily copied and,

when they must be reviewed before copying that review is usually conducted by counsel, the

location of documents is frequently only a minor consideration."  *City of Columbus,* 2007 WL

2029036 at *9.  In addition, electronic storage and delivery of documents has become so

sophisticated and prevalent that location of documents is of little consideration.

      3.    <u>Relative Financial Strength of the Parties</u>:  The relative financial strength of the

parties and their respective abilities to conduct the litigation in the original forum and the

proposed transferee forum are factors relevant to a decision.  *Id.* Neither party has addressed this

factor; and the Court, therefore, does not include it in its final determination.

      4.    <u>Convenience of the Witnesses</u>:  "'The convenience of witnesses is said to be a

primary, if not the most important, factor in passing on a motion to transfer under §1404(a).'"

*Midwest Motor Supply Co., Inc. v. Kimball*, 761 F.Supp. 1316, 1319, quoting *Houk v. Kimberly-*

*Clark Corp.*, 613 F.Supp. 923 (D.C. Mo. 1985); *see City of Columbus,* 2007 WL 2029036 at *9

("*Convenience of the Witnesses.* Courts normally give considerable weight to this factor."). Here, Burgess produced the names and locations of 21 likely witnesses in the case, including representatives on behalf of Worthington and additional, unnamed representatives from another construction company located in New York.  In its brief in opposition to transfer, Worthington did not oppose or otherwise deny that these witnesses are relevant to the case and are likely to be involved in the discovery and possible trial of this matter.

Of the 21 witnesses specifically identified, only four are located in Ohio.  In fact, Worthington itself, as Sharon Stairs, is no longer located in Ohio.  Twelve party witnesses live in New Jersey – including two of Worthington's representatives who engaged with Burgess to create the contracts and manage details of Worthington's involvement in the projects.  The remaining witnesses are all located in New York.

The cost and expense of discovery, depositions, and compelling witnesses to appear at court proceedings would be greatly reduced by transferring the case to New York.  With the majority of non-party witnesses in New York, the case can proceed more efficiently and non-party witnesses will not be as inconvenienced to participate in proceedings in neighboring New York.  Party witnesses from each side living in New Jersey are less inconvenienced by traveling to neighboring New York.  As such, the convenience of the witnesses, greatly weighs in favor of transferring the matter to New York.

5.      Relative Ease of Access to Proof/Practical Problems:

Worthington, as Sharon Stairs, is no longer in Ohio, and six of the seven projects at issue occurred in New York.  It appears from the court filings that the issues in the case involve Worthington's production and delivery of the stairs for each of the six New York projects and the work in Pennsylvania.  As such, transferring the case to New York will allow easier access to

non-party witnesses living in New York, as well as access to the vast majority of project sites for premises view and/or examination by any expert witnesses that may facilitate resolution of the case.  Therefore, this factor weighs in favor of transferring the case to New York.

  6. <u>Docket Congestion</u>:

  The Court has reviewed the *Federal Judicial Caseload Statistics 2013* published by the United States Courts, and there is no material difference between the transferee court and the transferor forum.  Thus, this factor has no weight in the ultimate determination.

  Concluding the analysis, all the factors weighed together compel a change of venue to the Southern District of New York, for the convenience of the parties and witnesses and in the interests of justice.  In light of this transfer, Burgess' remaining motion to stay pending arbitration shall be transferred to New York with the remainder of the case filings.

  **CONCLUSION**

  The Court DENIES Burgess' motions to dismiss for lack of personal jurisdiction and for improper venue.  The Court GRANTS Burgess' motion to transfer the case to the Southern District of New York.

  IT IS SO ORDERED.


  DATED: <u>September 24, 2014</u>    <u>*/s/ John R. Adams*</u>
                 Judge John R. Adams
                 UNITED STATES DISTRICT COURT

13